MoKmNEr, J.,
delivered the opinion of the court.
In January, 1847, a charter of incorporation was granted to “The Sumner Spinning and Manufacturing Company,” for the period of ninety-nine years, for the purpose of manufacturing cotton and woollen goods or either;” with a capital stock of not less than thirty thousand dollars, but, which might be increased at the option of the stockholders, to one hundred thousand.
On the 11th of July, 1851, the complainants entered into a written contract with the president and directors of said company, by which the former undertook to furnish, deliver, and put up for said company, at their factory building near Gallatin, a large quantity of machinery and fixtures of various kinds, for the manu *711 facture of woollen and cotton goods, and also for corn and flouring mills, a particular description of the quantity and quality of all wliicli is contained in tire written instrument, but need not for tlie purpose of tliis decision be here noticed. And, in consideration ' of this understanding, tbe president and directors, on behalf of the company, agreed to pay Cook & Steadman the sum of thirtynine thousand flye hundred dollars, one-half to be paid in cash, upon delivery to the company of the bills of lading of said machinery, and the policies of insurance upon the same properly endorsed to said company. The other half in six months from that date, with interest thereon. The following is the stipulation in respect to the mode of payment of the latter half. “The said Cook & Steadman agree to take one thousand dollars in the stock of said company, as payment to that extent; and they further agree to receive of said company, the ionds of the Corporation of Gallatin, for five thousand dollars, at ninety cents in the dolla/r, if the company shall wish to make such payment, the balance to be paid in cash.” The foregoing is the substance of so much of the agreement as is necessary to be stated.
The proof shows, that at a regular meeting of the Mayor and Aldermen of the town of Gallatin, held on the 1st of November, 1851, an ordinance was passed, the first section of which provides, “that the Mayor of said town shall, and he is hereby authorized and directed to subscribe for four thousand five hundred dollars of the capital stock in the Sumner Spinning and Manufacturing Company, upon the books of said company, in the name and for the use of said corporation.”
*712 The second section provides, “that to pay for said stock, the Mayor of the corporation is hereby directed to issue to said company, or to such person or persons as they may direct, the "bonds of said corporation, under the seal thereof, for the sum of five thousand dollars, payable in ten years from date, bearing interest at six per cent per annum, payable annually.” The third section provides, that the holder’s of said bond shall have a Ken upon the stock subscribed for said corporation. The fourth section provides for submitting said ordinance to a vote of the qualified voters of said town, &c.
It appears, that on submitting said ordinance to a vote of the corporators, it was approved by a large majority of the voters.
A subsequent ordinance, adopted on the 3d of January, 1852, which recites the former ordinance, and its approval by a majority of the qualified voters, directed the Mayor to make the subscription for said stock upon the books of the company; and to issue the bonds, when necessasy, for the payment of the same. The Mayor accordingly made said subscription on the 5th of January, 1852, in the name of the “mayor and aider-men of the corporation of the town of Gallatin,” for four thousand five hundred dollars.
On the 1st of October, 1853, five corporation bonds, each for one thousand dollars, payable to said company or bearer, ten years after , date, with interest from date at the rate of six per cent per annum, to be paid annually, were issued in proper form, under the seal of the corporation, and likewise signed with the proper name of the mayor.
*713 Of the questions discussed in the argument here, the only one necessary to -be considered, is, whether or not the complainants are entitled, under the circumstances, to be exonerated from their agreement to receive said bonds in part discharge of the debt due to them from the company.
The complainants insist, that they ought not to be compelled to accept said’bonds on the ground, mainly, that they are void for want of authority in the corporation to issue them. The defendant contends that the corporation, under its charter, had full power and authority to issue said bonds; and whether this be so or not, is the question for our consideration.
The town of Gallatin was incorporated by an act of the legislature, passed on the 17th of November, 1817. The act declares “that the corporation aforesaid, shall have full power and authority to enact and pass all laws and ordinances necessary to suppress vice and immorality; to preserve the health of the town; to prevent and remove nuisances; to establish night watches and patroles; to ascertain the boundary and-location of streets, lots and alleys; to provide for licensing, regulating, or restraining theatrical, and other public amusements within said town; to pave, and keep in repair, the streets; to establish necessary inspections; to erect and regulate markets; to appoint a recorder and high constable; to license and regulate a fire company; to levy and collect taxes ; to regulate and restrain tippling houses; to impose and appropriate fines and forfeitures; to provide for the sweeping of chimnies; to erect and regulate pumps on the public square, streets, or alleys; ór to convey water from the vicinity into the town; *714 and to pass all other laws necessary and proper for the good government of said town, and regulating the police thereof; provided, they are not incompatible with the constitution and laws of this State.”
Under the foregoing power “ to lay and collect taxes,” the authority to issue the bonds in question is claimed. It is scarcely necessary to repeat the familiar principle, that a corporation is the creature of the law, possessing no power or . authority except such as is expressly granted by the charter, or as is necessarily implied. And the simple statement of' this principle would seem to be sufficient for the decision of the question before us. No argument can be necessary to show that the authority to purchase stock in a manufacturing establishment, or to issue bonds for-the payment thereof, cannot be derived from the power of taxation conferred by the charter. No doubt can be entertained as to the nature or extent of the power “to lay and collect taxes,” contained in the charter.
The existence of such a power in the corporation was indispensable, as a means to the accomplishment of the end and object of its creation: the government and necessary police regulations of the town. The powers of a corporation, being the exercise of a delegated authority, are to bo strictly construed; and this rule applies with greater force to the power of taxation, from its very nature and liability to abuse.
In ascertaining the extent of the power “ to lay and collect taxes,” delegated to the corporation, we must look to the general powers specifically granted', and such as result from necessary implication, to the various objects contemplated by the charter, and the duties *715 enjoined, therein, and as far as the proper exercise of these powers, and the accomplishment and perfonnance of these various objects and duties may require, but no further may the power to raise money, by taxation, be exercised under the charter. If it be desired to possess the power to any greater extent, or for any other purpose, a further delegation of the power must be sought from the legislature.
This case does not require that we should go into the question, what is “a corporation purpose” in the proper sense of our constitution and laws? a question certainly of no easy solution, and one that, generally speaking, may be answered more readily negatively than affirmatively. We are not, therefore, called upon to determine whether or not, in the case before us, or in any supposa-ble case, the purchase of stock in a “ cotton and woollen manufactory,” is a “ corporation purpose.” It may be remai’ked, however, that if it were held to be so, it would be difficult, perhaps, to imagine any speculation that might not be so regarded.
But, without intending to decide a question not properly arising upon the record, we simply determine that the authority attempted to be exercised in the present case, of subscribing for stock, and issuing the bonds of the corporation in payment thereof, was wholly unauthorized by the charter. And, hence, it results that the bonds are utterly void. Being so, we think it clear, that the complainants cannot be compelled to accept the'm.
The complainants cannot be repelled upon the ground of ignorance of the law. This pi’inciple is not applicable to the case for several reasons. Because, from the *716 simple statement of the facts, one of the conclusions is inevitable, either that the contracting parties, mutually labored under gross ignorance of the law, or that the complainants were circumscribed by misrepresentation, or concealment, or misplaced confidence; and upon either assumption, the complainants would not be precluded from the relief sought. It is proper to say, however, that there is no just ground for the imputation of fraud on the- part of the company.
But the principle has no application, for a weightier reason. The maxim that ignorance of the law is no excuse for the breach or non-performance of any agreement, (because every one is bound at his peril, to know the law,) only applies, as we understand it, to the general or public laws of the land, which affect and prescribe a universal rule of action for the whole community; and, therefore, has no application whatever, to special or private acts of the legislature, which are designed only to operate upon particular persons, or to regulate private concerns.
It follows, therefore, that the decree of the Chancellor, so far as respects the corporation bonds, must be reversed. In all other respects, it will be affirmed.